UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME E. FLORMAN-GOFORTH,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No. CV 10-2895-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal from a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance benefits ("DIB"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he found that she was not credible. For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

## II. SUMMARY OF PROCEEDINGS

On April 10, 2006, Plaintiff applied for DIB, alleging that she became disabled on September 17, 1997, when she was hit in the head by a window she was trying to close, causing dizziness, headaches,

slurred speech, disorientation, pain, and depression. (Administrative Record ("AR") 71-75, 92, 151.) Her claim was denied initially and on reconsideration. She then requested and was granted a hearing before an ALJ. Plaintiff failed to appear for the hearing and her request to reschedule it was denied. (AR 18, 45-49.) On March 27, 2008, the ALJ issued a decision denying benefits. (AR 18-26.) Plaintiff appealed to the Appeals Council, which denied review. This appeal followed.

## III. DISCUSSION

The ALJ found that Plaintiff was not credible. (AR 24-25.) Plaintiff argues that the ALJ erred in reaching this conclusion. For the following reasons, the Court agrees.[1]

ALJs are tasked with judging the credibility of witnesses. In making credibility determinations, they employ ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons that are supported by substantial evidence in the record. *Id.* at 1283-84; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ cited four reasons for finding that Plaintiff was not credible: (1) "the disabling nature of the alleged impairments was not

---

[1] The Joint Stipulation is 24 pages long. Plaintiff sets out at page four that she is only challenging the ALJ's credibility finding and argues throughout the brief why she thinks the ALJ erred. At page 13, lines 13-22, however, she argues that the ALJ failed to provide sufficient reasons for rejecting one of her doctor's opinions. This claim is rejected on procedural grounds. Plaintiff cannot bury an argument in a single paragraph at page 13 of a 24-page brief and expect the Court to address it as a separate claim.

supported by objective findings and treatment records," i.e., there were no laboratory or clinical findings to support her claimed limitations; (2) Plaintiff was taking only over-the-counter medications to treat her condition; (3) Plaintiff's daily activities were inconsistent with a debilitating and incapacitating condition; and (4) there were minimal treatment records in the record to support her claimed impairments.  (AR 24-25.)  All four are specific and legitimate reasons for questioning a claimant's testimony.  *See, e.g.*, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (approving ALJ's discounting of claimant's testimony that impairment was severe where claimant treated impairment with over-the-counter medication); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (upholding ALJ's credibility determination in part because medical evaluations revealed little evidence of disabling abnormality); *Smolen,* 80 F.3d at 1284 (explaining ALJ may consider claimant's daily activities in evaluating credibility).  The issue that remains is whether they are supported by substantial evidence and whether they are convincing.

    Beginning with the first reason--the lack of objective medical evidence--the Court would agree that, in general, there is not a lot of objective evidence supporting Plaintiff's claim that her headaches and general confusion make it impossible for her to function in the workplace.  As to the headaches, the court is not clear as to what if any significance there is to the lack of objective evidence.  The Court has seen cases where a person suffers a head injury that causes headaches and that the injury is visible through some type of brain scan, e.g., CT scan, x-ray, MRI, PET scan, etc.  But the Court is also aware of cases where individuals suffer from chronic headaches where there is no observable or identifiable cause.  Thus, the fact that

Plaintiff is unable to hold up an x-ray to show the cause of her headaches does not convince the Court that she must be exaggerating these claims.

Further, there is some objective evidence in this record of abnormal neurology. Plaintiff's treating doctor, Dr. Bertoldi, referred Plaintiff for EEG/QEEG testing, which revealed, as best the Court can interpret the medical jargon used by the doctors, that Plaintiff's results were abnormal "with greater than 90% statistical probability" that she suffered from traumatic brain injury. (AR 231-32.) This appears to be objective evidence and could account for her headaches. But the record is just not clear. Ultimately, the Court finds that the ALJ's reliance on the lack of objective medical evidence to corroborate Plaintiff's claimed debilitating headaches is not convincing.

The same is true with respect to the ALJ's finding that there was a lack of objective medical evidence supporting Plaintiff's claimed confusion and difficulty concentrating. According to treating doctor Bertoldi, neuro-psychological testing performed by Dr. Enid Reed, at Dr. Bertoldi's behest, established "severe testing abnormalities in terms of attention, mental control, informational processing, and general cognitive functioning." (AR 217.) It appears that Dr. Reed's test results amount to objective evidence of Plaintiff's cognitive difficulties. *C.f. Vasquez v. Astrue*, 572 F.3d 586, 594-96 (9th Cir. 2009) (addressing "objective evidence of impairment" obtained from psychological testing). The ALJ failed to mention these tests, however. (Perhaps this was because the test results themselves were not included in the record.) This calls into question the propriety

of the ALJ's reliance on this factor to discount Plaintiff's testimony.

The ALJ's second reason for rejecting Plaintiff's testimony--that despite her claimed debilitating headaches she was taking only over-the-counter pain medication--is not supported by substantial evidence. Though there is evidence in the record that Plaintiff was, at times, taking nothing stronger than over-the-counter pain relievers, (AR 144, 147, 152, 170), the ALJ's finding in this regard appears to be based solely on the list of medications that Plaintiff was taking on the date she filled out a disability report. (AR 24, 97.) A review of the record, however, shows that Plaintiff had tried various pain relievers, including narcotic pain relievers, since her accident--e.g., Vicodin, Ultracet, Midrin, and Maxalt--as well as anti-depressant medications that were prescribed for migraine headaches, such as Nortriptyline (Pamelor) and Celexa. (AR 156, 239, 263, 314, 317, 322, 333.) Thus, the ALJ's finding that Plaintiff used only over-the-counter medication to treat her ailments is not supported by substantial evidence in the record.

The ALJ's third reason for questioning Plaintiff's credibility was that her daily activities were inconsistent with her claimed disability. Arguably, there is some support in the record for this finding. Plaintiff takes care of herself--grooming, preparing meals, etc.--and performs routine household tasks, like gardening and cleaning. (AR 102, 107.) She also handles her own finances and goes to college four to six hours a day. (AR 100, 103.) However, it is hard to tell based on this record how often and how intensely she performs these tasks. Plaintiff claimed that she had flunked four tests in college, requiring her to retake the exams. (AR 107.) And,

according to Plaintiff, it takes her longer to perform her accounting tasks. (AR 103.) Thus, though this justification is supported by what the Court would categorize as some evidence, it is not that substantial nor is it convincing. *See, e.g., Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (overruling ALJ's finding that claimant was not credible when she claimed that she could not work based on fact that she could perform daily activities where extent of daily activities did not suggest that she performed them a substantial part of the day or that they would transfer to work setting).

The ALJ's final reason for rejecting Plaintiff's claimed debilitating pain was that there were minimal treatment records. Here, the Court agrees. There are relatively few treatment records in the record for someone who alleges debilitating impairment for almost ten years. This is particularly true where a lot of the "treating" records came from a chiropractor and an acupuncturist, who are not even acceptable medical sources. *See* 20 C.F.R. § 404.1513 (listing acceptable medical sources and not including acupuncturists and chiropractors); and *Helmke v. Astrue*, 371 Fed. App'x 748, 749 (9th Cir. 2010) (noting chiropractors are not acceptable medical sources under the social security regulations).

The Agency argues that there is a fifth reason to uphold the ALJ's decision, namely that the record establishes that Plaintiff's treatment was conservative. (Joint Stip. at 20.) The Agency, however, may not rely on this argument to support the ALJ's credibility finding because the ALJ did not cite it as a reason in his decision. *Pinto v. Massanari*, 249 F.3d 840, 848-849 (9th Cir. 2001) (explaining court cannot affirm ALJ's decision for reason not

specified by ALJ in his decision).[2]

In the end, of the four reasons cited by the ALJ for rejecting Plaintiff's testimony, the Court finds that only one is backed by substantial evidence and is convincing--i.e., the fact that Plaintiff's treatment records were minimal. The Court is not convinced that this reason alone is enough to support the ALJ's credibility finding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (stating that the "relevant inquiry . . . is whether the ALJ's decision remains legally valid," despite

---

[2] Plaintiff argues that, because the ALJ accepted her claim that she was forced to terminate her trial work period due to her ailments, he was precluded from rejecting her claim that her condition rendered her incapable of working. (Joint Stip. at 9-10, citing *Carradine v. Barnhart*, 360 F.3d 751, 754-55 (7th Cir. 2004).) The Court rejects this argument. First, Seventh Circuit precedent is not binding on this Court. Second, even if it was, Judge Posner's majority decision in *Carradine*, questioning the propriety of the ALJ's acceptance of some of the claimant's testimony but not all of it, is contrary to the law of the Ninth and the Seventh Circuits. *See, e.g.,* Ninth Circuit Model Jury Instruction 1.11 ("In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it."); and Seventh Circuit Model Jury Instruction 1.03 ("You are to decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, you give to the testimony of each witness."). Third, it defies common sense to believe that a witness who tells the truth about one thing is telling the truth about everything. For example, a defendant in a criminal case who testifies that he was at his grandmother's house when the crime was committed does not lie about everything that happened that day. He lies only about the important things, like where he was when the crime was committed. If he lied about everything, his lies would be easily exposed to the jury. So, too, do some claimants in social security cases lie about some things but not others. For example, though they may tell the truth about their name, age, education, etc., when it comes to how bad they feel as a result of a particular ailment, they may lie or exaggerate in an effort to convince the ALJ that they are disabled. The ALJ's job is to sort through that testimony and figure out which part to believe and which part not to believe.

errors in the credibility analysis).  For all these reasons, the ALJ's decision is reversed.[3]

IT IS SO ORDERED.

DATED: September 9, 2011

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-CLOSED\Closed-Soc Sec\FLORMAN-GOFORTH, J 2895\memo opin and order.wpd

---

[3] Plaintiff asks the Court to remand the case for an award of benefits.  The Court recognizes it has the authority to do so, see *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989), but concludes that that relief is not warranted here.  To begin with, by failing to appear at the administrative hearing and testifying before the ALJ, Plaintiff created the predicament we now find ourselves in.  She has prevented the ALJ from observing her testimony and having a better basis to assess her credibility.  Further, it is not clear to the Court from the bare record before it whether or not Plaintiff is, in fact, credible.  Further proceedings are necessary to flesh this out.